IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR52 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| STEFAN CARNES, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S PRO SE MOTION TO |
| Defendant. | ) | WITHDRAW PLEA OF GUILTY |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Assistant United States Attorneys Vasile C. Katsaros and Robert F. Corts, and respectfully requests that this Honorable Court deny defendant's motion to withdraw his guilty plea for the reasons set forth in the attached Memorandum.

                                                                      Respectfully submitted,

                                                                       JUSTIN E. HERDMAN
                                                                       United States Attorney

                              By:    /s/Robert F. Corts
                                         Robert F. Corts (OH: 0041439)
                                         Vasile C. Katsaros (OH: 0067386)
                                         Assistant U.S. Attorneys
                                         United States Courthouse
                                         801 West Superior Ave., Ste 400
                                         Cleveland, Ohio 44113
                                         (216) 622-3957/3876
                                         Robert.Corts@usdoj.gov
                                         Vasile.Katsaros@usdoj.gov

**MEMORANDUM**

I.  **Procedural History**

On January 29, 2019, a four-count indictment was filed in the United States District Court for the Northern District of Ohio, charging Carnes with two (2) counts of possession with intent to distribute controlled substances. Count 1 was in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and Count 2 being a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Carnes was also charged with one count of being a felon in possession of a firearm, in violation of Title 18, U.S.C. § 922(g) and another count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(A)(i). Count 1 mandated a 5-year minimum mandatory sentence and Count 4 mandated a 5-year mandatory minimum sentence to be consecutive to any other sentence.

On June 21, 2019, Carnes entered a plea of guilty to the indictment pursuant to a Rule 11(c)(1)(C) plea agreement where the parties agreed to a 120-month sentence (the minimum sentence). On October 17, 2019, Carnes filed a Motion to Withdraw his guilty plea.

II.  **Facts**

The plea agreement provided that the parties agreed the facts were as follows:

> On or about December 31, 2018, in the Northern District of Ohio, Eastern Division, Defendant STEFAN W. CARNES did knowingly and intentionally possess with intent to distribute approximately 202.79 grams of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).
> On or about December 31, 2018, in the Northern District of Ohio, Eastern Division, Defendant STEFAN W. CARNES did knowingly and intentionally possess with intent to distribute approximately 29.98 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).
> On or about December 31, 2018, in the Northern District of Ohio, Eastern Division, Defendant STEFAN W. CARNES, having been previously convicted of a

2

crime punishable by imprisonment for a term exceeding one year, that being: Possession of Heroin (F4), in Case No. 17CR095853 in the Lorain County Common Pleas Court, on or about August 6, 2018, did knowingly possess in and affecting interstate commerce a firearm, to wit: a Taurus, .45 caliber pistol, serial number NVH44900, and ammunition, said firearm and ammunition having been shipped in interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1).

On or about December 31, 2018, in the Northern District of Ohio, Eastern Division, Defendant STEFAN W. CARNES did knowingly possess a firearm, that is, a Taurus, .45 caliber pistol, serial number NVH44900, in furtherance of a drug trafficking crime for which Defendant may be prosecuted in a court of the United States, that is, possession with intent to distribute mixtures and substances containing controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Counts 1 and 2 of this Indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A), and punishable under Title 18, United States Code, Section 924(c)(1)(A)(i).

The amount of drugs possessed with the intent to distribute by Defendant and directly attributable to Defendant's actions and reasonably foreseeable was at least 232.77 grams of fentanyl. Defendant knew that the substance Defendant was possessing and distributing was actually fentanyl.

At trial, the Government would have submitted the following evidence. On December 31, 2018, an Elyria Police Department officer in a marked patrol car on patrol, eastbound on Broad Street in downtown Elyria, Ohio, observed a white Hyundai Santa Fe, FL Tag JKR38 parked along Broad St in front of a bar. As the officer passed the bar and vehicle, he observed a message on his in car computer messaging and intelligence system indicating a female had recently reported this vehicle stolen. The officer had passed the vehicle's location, so he turned around to return to the area to further investigate the possible stolen vehicle. As he did, the Hyundai was backing out of the parking spot and heading eastbound on Broad. The officer began to follow the Hyundai as it turned southbound on East Ave. The officer observed that the driver failed to signal his turn onto East Ave., and had not activated his headlights. As the officer followed, he radioed his location and observation of the reported stolen vehicle and other EPD officers began to converge on the area. The Hyundai traveled only a couple blocks before pulling into the parking lot of the Sunoco station at East Ave. and 4th St. in Elyria and came to a stop. An EPD officer pulled in behind the Hyundai and activated his overhead lights to further

investigate the stolen vehicle and any traffic violations as described above. The officer exited his cruiser, approached driver's side door and ordered the driver out of the car. The Officer observed the driver, Stefan Carnes, leaning forward with his head below the steering wheel making furtive gestures and then observed Carnes hand a black bag to the front seat passenger, who was later identified as a 17 year-old female.

As officer ordered Carnes to exit the vehicle, Carnes replied "I aint getting out, I can call the owner right now." The officer repeatedly ordered Carnes out of the car and he refused. The officer opened the driver's door, advised Carnes he was under arrest and tried to pull him out. Carnes gripped the steering wheel, resisting, and then eventually stepped out.

As Carnes stepped out, he leaned into the car and told the 17 year-old "take off and dump that." The female hopped out of her door and began running southbound on East Ave with the black bag in her hand. The officer broadcast over radio the female's description and flight. At some point during the altercation, another subject jumped out of the back seat of the car and began running.

The officer had Carnes pressed up against the car attempting to handcuff him. As he did so, Carnes swung his elbow back toward the officer and began running southbound through the Sunoco lot. Carnes was eventually apprehended but resisted and fought with the officers throughout.

Two other officers who responded to the scene pursued the female who was running from the car with the bag given to her by Carnes. She ran through the Sunoco into the backyard of the house just to the south of the gas station. As she ran into the yard, she threw the black bag off

4

the cliff behind the house (the house's yard backs up to the Black River) as the pursuing officers started to grab her. Officers then observed the black bag about 20' down the cliff and retrieved it

Officers then inventoried the contents of the stolen car as they waited for the tow truck, inside they located:

a. (2) digital scales with drug residue, which were sent to crime lab and had residues identified as:
   i. 1 – heroin and fentanyl
   ii. 2 – cocaine and THC
b. (2) plastic baggies with grey powder, which were sent to Crime Lab and identified as:
   i. 1.15 grams heroin and fentanyl
   ii. 5.34 grams heroin and fentanyl
c. A Taurus Millennium .45 caliber handgun bearing S/N NVH44900, with a loaded mag and a round in the chamber
   A silver iPhone

These items, scales, drugs, phone and firearm, clearly represented items used in trafficking narcotics. Officers were able to retrieve the bag thrown over the cliff and then examined the contents of the black bag (fanny pack) and located:

(3) bags of grey powder, which were sent to Crime Lab and found to be:
   i. 188.13 grams of fentanyl
   ii. 14.66 grams of fentanyl
   iii. 23.49 grams of heroin and fentanyl
   iv. $3010 in cash

These items, drugs and cash, clearly represented items regularly used in trafficking narcotics.

The firearm was determined to be a Taurus pistol that was manufactured in Brazil. Carnes had (2) felony convictions in Lorain County, 17CR095843, 8/6/18, possession of heroin (F4) and possession of cocaine (F5), and in 18CR098421, 8/6/18, Weapons Under a Disability (F3), Carrying Concealed Weapon (F4), Improper Handling of Firearms in Motor Vehicle (F4).

Carnes made statements to the FBI after being mirandized and admitted possessing the fentanyl described above and described where he had received the fentanyl. Carnes furthermore made statements acknowledging the firearm and admitted that he knew the gun was in the car with him when stopped by the police.

### III.    Law and Argument

Carnes asks this Court to allow him to withdraw his plea for three (3) specific reasons. Carnes first alleges that he was unaware that his plea to the firearm counts would preclude him from participating in the RDAP program. Carnes next claims that a plea to the firearm conviction would also serve as a bar to him receiving any additional "good days" through that program or through the "First Step Act". Carnes final claim is he now asserts some form innocence of the firearm charges in the case though somewhat vague and unclear in his motion.

Rule 11(d), Federal Rules of Criminal Procedure, provides that a district court may permit a guilty plea to be withdrawn before sentence is imposed if "the defendant can show a fair and just reason for requesting the withdrawal." Rule 11(d)(2)(B). However, "[a] defendant does not have an absolute right to withdraw a guilty plea and has the burden of proving that he is entitled to withdraw it." Unites States v. Young, 310 Fed. Appx. 784, 791 (6th Cir. 2009). This burden is met only where a defendant can show that "fair and just reason exists for withdrawal of his guilty plea." United States v. Mader, 251 F.3d 1099, 1105 (6th Cir. 2001). Accord, United States v. Bazzi, 94 F.3d 1025, 1027 (6th Cir. 1996) (burden is upon defendant to demonstrate that proper grounds exist for withdrawal of plea). The factors the district court may consider in evaluating whether the defendant has met his burden include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty

6

>plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

Bazzi, 94 F.3d at 1027. Accord, Mader, 251 F.3d at 1105; United States v. Pluta, 144 F.3d 968, 973 (6th Cir. 1998). The foregoing factors represent "a general, non-exclusive list", with no one factor being "controlling." Bazzi, 94 F.3d at 1027. Although potential prejudice to the government is a factor which may be considered, the "government is not required to establish prejudice . . . unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." United States v. Spencer, 836 F.2d 236, 240 (6th Cir. 1987). Accord, United States v. Triplett, 828 F.2d 1195, 1198 (6th Cir. 1987).

As explained in the 1983 Advisory Committee Notes to Rule 32,[1] quoted with approval by the U.S. Supreme Court in United States v. Hyde, 520 U.S. 670, 676-77 (1997):

>"Given the great care with which pleas are taken under [the] revised Rule 11, there is no reason to view pleas so taken as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice. 'Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a "grave and solemn act", which is "accepted only with care and discernment.""" Advisory Committee's Notes on Fed. Rule Crim. Proc. 32, (quoting United States v. Barker, 514 F.2d 208, 211 (C.A. D. C. 1975) in turn quoting Brady v. United States, 397 U.S. 742, 748 (1970)).

Since the factors present in Carnes' case do not weigh in favor of withdrawal, the government respectfully request that this Honorable Court deny his motion.

**1.      Length of time between plea and withdrawal.**

---

[1] Rule 11(d)(2)(B)'s "fair and just reason" standard was previously set forth in Rule 32(d), Federal Rules of Criminal Procedure.

In the present case, even though Carnes claims that he had "some" reservations about the plea shortly after the plea, he did not file his motion to withdraw until approximately four months from the entry of the plea.  The usual time between a federal plea and sentencing is approximately 3 months, and in fact, in this case the sentencing had been scheduled for October 3, 2019.  Carnes did not even file this motion to withdraw until October 17, 2019, some 14 days after the original sentencing date.  In this case, the amount of time that has passed likely could <u>not have been</u> any longer.  As will be discussed below, Carnes expressed no objections or hesitation to the court at the time of the guilty plea.  In fact, Carnes through his counsel secured a potentially favorable plea if the Court were to approve it to the minimum possible sentence of 120 months instead of the 70-87 month sentence on counts 1, 2 and 3, which has to be consecutive to 60 months on count 4.  Based on the record as described below, Carnes entered into a knowing and voluntary plea, which should not be cast aside because he simply changed his mind.

    **2.**     <u>**Asserting his innocence.**</u>

At <u>no time</u>, except for now after some sticker shock or buyer's remorse, did Carnes assert or maintain his innocence regarding any of his conduct in this case.  Carnes did not do that at any point during the plea hearing.  Carnes' innocence is also belied by the fact that he voluntarily stood before this Court and entered a plea of guilty.  Furthermore, on at least two occasions during the plea hearing, Carnes admitted he was guilty of the offenses including the firearm offenses.

It should be stated that Carnes, even at this point does not contest his guilt as it relates to Counts 1 and 2 of the indictment, the drug charges.  He seems to now claim innocence as it

8

relates to the facts regarding the firearm offenses but during the plea, he agreed he was indeed guilty of those offenses too.

 Carnes, after being sworn, entered into a colloquy with the Court related to his guilt in the case. At no time did he assert any semblance of innocence. During the hearing, after this Court explained Carnes' legal options, this Court asked Carnes to review the factual basis in the plea agreement. This Court asked the defendant if he had read the statements made in the factual basis, specifically the "factual description given in paragraphs 22-27?" Carnes stated that he had. (R. 21: Plea Hearing Trans., PageID 91-92). Carnes offered no alterations or protest as to those statements at that time. The Court further asked Carnes as to whether the statements made in the paragraphs, specifically the factual description, was true. Carnes again responded that they were true and offered no alterations or protest as to those statements at that time. (*Id.*, PageID 92-93). The Court continued and went through the conduct for each count and asked Carnes whether he did indeed commit the conduct of each count. Each time Carnes answered that he did, he never offered any alterations or protest as to those facts at that time. (*Id.*, PageID 92-94). Specifically, as it relates to the weapons offenses the following colloquy took place:

> THE COURT: And on December 31st, 2018, had you previously been convicted of a felony offense?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And after having the previous felony conviction, did you knowingly possess a Taurus .45 caliber firearm?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And had that firearm traveled in and affecting interstate commerce before coming into your possession?
>
> THE DEFENDANT: Yes, your Honor.

9

> THE COURT: And did you possess that firearm in furtherance of a drug trafficking crime.
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And did this -- did these crimes occur in the Northern District of Ohio?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And where specifically?
>
> THE DEFENDANT: Elyria, Ohio.

(*Id*., PageID 92-93).

Again, at the conclusion of the hearing, the Court asked Carnes what his plea was to each count described above and Carnes answered each time by stating "guilty" (*Id*., PageID 92-94).

While Carnes now seeks to disavow the assurances he provided and the sworn statements he made at the time his guilty plea was entered, those representations in open court "carry a strong presumption of verity," Blackledge v. Allison, 431 U.S. 63, 74 (1977), and the "presumption of verity" is not defeated by the "subsequent presentation of conclusory allegations" to the contrary.  Id.  Accord, United States v. Maher, 108 F.3d 1513, 1529-30 (2nd Cir. 1997) (district court may summarily deny motion to withdraw where movant's allegations merely contradict earlier statements made under oath at plea hearing).  Carnes does not even make any allegations other than a vague reference that he claims his innocence now as it relates to the "specific facts in this case".

### 3. The circumstances underlying the entry of the guilty plea.

There is nothing significant about the circumstances in which the Carnes came forward and entered his plea of guilty that would be of cause to allow him to withdraw his plea.  Carnes

claims in his motion that his attorney failed to describe the potential loss of good time credits and or acceptance into a bureau of prisons program is not tantamount to an uninformed plea. Any defendant who pled guilty to such offenses could potentially lose the opportunity for these programs and Carnes is no different from any other similar situated defendant. Courts have determined that counsel's failure to disclose to a defendant <u>collateral</u> consequences is not sufficient to render a plea involuntary. <u>In King v. Dutton</u>, 17 F.3d 151, 153–54 (6th Cir.1994), the Sixth Circuit explained that the district court has no obligation to inform the defendant of possible collateral consequences of his plea. A direct consequence is a result flowing from a plea that is "definite, immediate, and automatic." Id. at 154–55. "A collateral consequence is one that 'remains beyond the control and responsibility of the district court in which that conviction was entered.'" <u>El–Nobani v. United States,</u> 287 F.3d 417, 421 (6th Cir.2002) (quoting <u>United States v. Gonzalez</u>, 202 F.3d 20, 27 (1st Cir.2000)). Further, in <u>Kratt v. Garvey</u>, 342 F.3d 475, 485 (6th Cir.2003), the court held that a district court had no obligation to inform the defendant that his pilot's license would be revoked as a result of his guilty plea, because the license revocation was a matter beyond the control and responsibility of the district court. See also: <u>Hutchison v. United States</u>, 450 F.2d 930, 931 (10th Cir.1971) (per curiam ) (rejecting an argument that a guilty plea was involuntary because of a failure to advise the defendant that his " 'good time' credit had been forfeited"); accord <u>Johnson v. Dees</u>, 581 F.2d 1166 (5th Cir.1978) (per curiam ) (holding that a guilty plea was not rendered involuntary for failure to inform the petitioner that he could be denied good-time credits as a result of the conviction); 1 A Charles Wright & Andrew Leipold, Federal Practice and Procedure: Criminal § 177 at 241-44 (4th ed.2008) ("courts have found that ... denial of 'good time' credit as a multiple offender" "need not be discussed by the court" in connection with a guilty plea). The failure to inform of

11

consequences collateral to a plea does not render the plea involuntary or provide an adequate reason for the plea to be withdrawn.

The underlying circumstances of this plea are insignificant to any showing of fair and just reason for requiring the withdrawal of the guilty plea.

### 4. **Defendant's nature and background and his prior experience with the criminal justice system.**

Two of the most important criteria that this Court should consider are Carnes' nature and background, and his prior experience with the criminal justice system. These factors both weigh against allowing Carnes to withdraw his guilty plea. Carnes is a 26-year-old male who attended school through the 12th grade and is able to read and write. His criminal history includes at least 11 prior convictions wherein he entered pleas of guilty each time with at least two of these being felony convictions. The felony convictions were not of a minor or insignificant nature and they included firearm and drug offenses. Carnes is no stranger to the criminal justice system. These factors weigh heavily against allowing him to withdraw his guilty plea. Indeed, his numerous convictions establishes that he "was not a naive stranger to the criminal proceedings in which he was involved." Pluta, 144 F.3d at 974. Most notably is the fact that he had pleaded guilty in most or all of his prior convictions and therefore, the Criminal Rule 11 colloquy and the plea process was not new or novel to him.

### 5. **The prejudice to the government.**

The government is not required to make a showing of prejudice (Spencer, 836 F.2d at 240), prejudice to the government is a factor the court may consider in weighing whether to allow defendant to withdraw his plea. Bazzi, 94 F.3d at 1027. There is a natural prejudice that inures when a defendant's plea that was constitutionally sound is permitted to be withdrawn simply due to a change of heart, as is the case here.

## IV.     Conclusion

The defendant cannot show "a fair and just reason for requesting the withdrawal" in this case. The defendant, at every turn, acknowledged that he understood every aspect of the plea agreement, including his constitutional rights, the potential sentencing consequences, the advisory sentencing guidelines and the factual basis for the plea of guilty. Carnes was not some young, inexperienced neophyte to the criminal justice system, but rather a veteran criminal who was well-versed in the entering of guilty pleas. Carnes clearly stated that he understood all aspects of his plea and the case and that were no threats or promises made to him to enter a plea in this case. The plea benefitted Carnes and exposed him only to the minimum mandatory sentence and in effect was a minimum sentence. It is clear that Carnes has had nothing more than a mere change of heart as it relates to the potential sentence and a change of heart is not sufficient for a withdrawal of a validly entered and accepted plea of guilty. To allow a withdrawal in this case would render a guilty plea nothing more than a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. As stated above, a guilty plea is no such trifle, but a "grave and solemn act", which is "accepted only with care and discernment." Advisory Committee's Notes on Fed. Rule Crim. Proc. 32, (quoting United States v. Barker, 514 F.2d 208, 211 (C.A. D. C. 1975) in turn quoting Brady v. United States, 397 U.S. 742, 748 (1970)). This Court demonstrated that care and discernment throughout the proceeding and insured that Carnes understood, appreciated, and agreed with his actions of knowingly entering a plea of guilty. The failure to inform of consequences collateral to a plea does not render the plea involuntary or provide an adequate reason for the plea to be withdrawn.

Based upon an analysis of all the factors to be considered the government respectfully requests that this Honorable Court deny defendant's motion to withdraw his guilty plea.

                Respectfully submitted,

                JUSTIN E. HERDMAN
                United States Attorney

By:   /s/ Robert F. Corts
       Robert F. Corts (OH: 0041439)
       Vasile C. Katsaros (OH: 0067386)
       Assistant United States Attorneys
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3957/3876
       (216) 522-2403 (facsimile)
       Robert.Corts@usdoj.gov
       Vasile.Katsaros@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on this 29th day of October 2019, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

                /s/ Robert F. Corts
                Robert F. Corts
                Assistant U.S. Attorney